UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BRANDON MICHAEL THOMAS, et al.,<br><br>Defendant. | No. 1:14-cr-228-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 461) |

Pending before the court is defendant Brandon Michael Thomas' motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 461 at 8–14.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On October 23, 2014, the federal grand jury for this district returned an indictment charging eight defendants, including defendant Thomas with conspiracy to distribute and possess with the intent to distribute marijuana in violation of 21 U.S.C. §§ 846 and 841(a)(1) and (b)(1)(C) (Count One) and with engaging in a structuring conspiracy for purposes of evading the Currency Transaction Report (CTR) filing requirements in violation of 18 U.S.C. § 371 (Count

Two).  (Doc. No. 14.)  On April 11, 2016, defendant Thomas entered a plea of guilty to the structuring conspiracy as charged against him in Count Two.  (Doc. Nos. 245 at 3; 246.)

According to the presentence report prepared in defendant Thomas's case, the conspiracy charged in Count One involved the shipping of marijuana and concentrated THC derived from the marijuana plant from California to Florida and Georgia.  (Doc. No. 340 (Presentence Report) at 5–6.)  Proceeds from the marijuana sales "were funneled back to California through structured bank deposits (in Florida) and withdrawals (in California)."  (*Id.* at 6.)  Pursuant to the structuring conspiracy, "[t]he deposits were made in amounts of $10,000 or less in order to prevent, or attempt to prevent, the financial institutions from filing Currency Transaction Reports on those transactions."  (*Id.*)  It was determined under the U.S. Sentencing Guidelines that defendant Thomas's adjusted offense level was 21 and his criminal history category was I, resulting in an advisory sentencing guideline range calling for a sentence of imprisonment of between 37 and 46 months.  (*Id.* at 16.)  The presentence report reflected the probation officer's recommendation that defendant Thomas be sentenced to a low end of the guideline range sentence of 37 months imprisonment.  (*Id.*)  However, on February 6, 2017, the then-assigned district judge instead sentenced defendant Thomas to a 36 month term of probation.  (Doc. Nos. 383; 384 at 2.)

A little over a year into his three-year term of probation, on March 14, 2018, the U.S. Probation Office filed a petition alleging that defendant Thomas had violated the conditions of that probation and a warrant was issued for his arrest.  (Doc. Nos. 399, 402.)  Specifically, it was alleged that defendant Thomas violated the conditions of his probation by again distributing and shipping marijuana, unlawfully possessing controlled substances (steroids), using steroids, associating with prohibited persons (his co-defendant in this case), and failing to comply with various other conditions of his probation.  (Doc. No. 399 at 2–4, 7–10.)  Defendant admitted to the charges set forth in the violation petition, his probation was revoked, and, on August 30, 2018, defendant was sentenced by the original sentencing judge to 60 months in prison with 36 months of supervised release to follow.  (Doc. Nos. 449, 450, 453.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Lexington Federal Medical Center in Lexington, Kentucky ("FMC Lexington").  (Doc. No. 461 at

2.) On June 3, 2020, defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). (*Id.*) On June 17, 2020, the government filed its opposition to the motion, and on June 24, 2020, defendant filed his reply thereto. (Doc. Nos. 464, 467.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, __ F. Supp. 3d __, 2020 WL 1673440, at *2 (D. Or. April 6, 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[1] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section

---

[1] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

>3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[2]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[3]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary

---

[2] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[3] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c). *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-

5

LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4; *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

A.    **Administrative Exhaustion**

On April 28, 2020, defendant submitted an administrative request to the Warden at FMC Lexington seeking compassionate release. (Doc. No. 461, Ex. B, at 29–30.) Defendant did not attach any response from the Warden to the pending motion when he filed it with this court on June 3, 2020. (*Id.*) According to the government at the time it filed its opposition, on June 17, 2020, defendant's administrative request to the Warden at FMC Lexington was "still pending." (Doc. No. 464 at 10.) Because more than 30 days passed since defendant submitted a request to the Warden at FMC Lexington without receiving any response, the court concludes that defendant has exhausted his administrative remedies and will turn to the merits of the pending motion.

B.    **Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* In addition to terminal illnesses, a defendant's debilitating physical or mental

6

condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Thomas argues that extraordinary and compelling reasons warranting his compassionate release exist due to his medical condition. To establish extraordinary and compelling reasons in support of his compassionate release motion, defendant must show that he

is "suffering from a serious physical . . . condition . . . that substantially diminishes [his] ability . . . to provide self-care" in FMC Lexington and "from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). At the time of his original sentencing, it was noted that in December 2015 defendant was diagnosed as suffering from leukemia. (Doc. No. 340 (Presentence Report) at 9.) For approximately seven months before he was originally sentenced to a three-year term of probation, defendant was receiving chemotherapy daily and was regularly taking medication related to that treatment. (*Id.*) Defendant's BOP medical records confirm that leukemia is listed among defendant Thomas' current conditions and that he is taking medication daily. (Doc. No. 461, Ex. B, at 34, 39.) The doctor providing defendant with medical care prior to his original sentencing stated that defendant's leukemia is an "incurable disease and [he] requires long term treatment and observation." (Doc. No. 340-1 at 1.) According to the most recent BOP medical visitation records submitted in support of the pending motion, it appears that FMC Lexington is providing defendant with regular follow-ups and observation for his leukemia. (Doc. No. 461, Ex. B, at 41–47.) Thus, there is no doubt that defendant suffers from a serious medical condition that he will likely never fully recover from. Further, BOP medical records reflect that defendant suffers from "mild" asthma, for which medical staff have prescribed him an albuterol inhaler. (*Id.* at 34–35.)

According to the U.S. Centers for Disease Control and Prevention ("CDC"), defendant is at higher risk of contracting a severe illness from COVID-19 because he currently has leukemia, which is a form of cancer. *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION,

/////
/////
/////
/////
/////
/////
/////

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 2, 2020).[4]  Additionally, the court does not discount the risks posed by COVID-19 to individuals who have asthma.  However, the CDC only recognizes "moderate-to-severe asthma" as an at-risk category, yet defendant has mild asthma.  *Id.*  Nonetheless, it is clear that defendant's leukemia puts him at risk due to COVID-19.  Moreover, as noted above, defendant Thomas is "suffering from a serious physical . . . condition . . . from which he . . . is not expected to recover."  *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

With respect to whether extraordinary and compelling reasons exist here, the only question then is whether defendant's leukemia "substantially diminishes [his] ability . . . to provide self-care" in FMC Lexington amid COVID-19.  *See id.*  Based on the current evidence, the court concludes that defendant has not carried his burden in this regard.  First and foremost, the risk posed to defendant by COVID-19—at this juncture—is at most minimal.  This is because defendant has tested positive for COVID-19 but he has not displayed any symptoms.  (Doc. Nos. 461, Ex. C, at 51 ¶ 6; 464 at 10 (stating defendant tested positive, was isolated, monitored, and released from isolation and placed into a recovery unit); *see also* 471 at 10 (sealed).)  In fact, neither the pending motion nor the reply in support thereof discuss how defendant's having contracted COVID-19 has impacted him at all.  (*See passim* Doc. No. 461.)  Defendant instead focuses on some future "risk" posed to him, even though he appears to be asymptomatic at this time.  (*See* Doc. No. 461 at 14.)  It is true that FMC Lexington suffered an extremely severe outbreak of the virus, with 212 inmates contracting COVID-19 and having recovered, but with eight others passing away at its hands.  *See COVID-19*, FEDERAL BUREAU OF PRISONS,

---

[4] The government states that it "could not find" that defendant's specific diagnosis of chronic myeloid leukemia places him at higher risk from COVID-19.  (Doc. No. 464 at 18.)  However, chronic myeloid leukemia (also known as chronic myelogenous leukemia) "is an uncommon type of cancer of the bone marrow."  *See Chronic myelogenous leukemia*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/chronic-myelogenous-leukemia/symptoms-causes/syc-20352417 (last visited Sept. 2, 2020).  According to the CDC, individuals with cancer are at higher risk of contracting a severe illness from COVID-19.  *See Coronavirus Disease 2019 (COVID-19): People Who Are at Increased Risk for Severe Illness*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Sept. 2, 2020).  Thus, it is clear that defendant Thomas does suffer from a condition placing him at higher risk from COVID-19.

https://www.bop.gov/coronavirus/ (last visited Sept. 2, 2020).[5] Presently, it is reported that one inmate at that institution and no staff members have the virus.[6] *Id.* In any event, because defendant has already tested positive, granting him release "will not provide him with the protection sought by his motion: relief from the risk of contracting COVID-19." *United States v. Russo*, 1:16-cr-00441-LJL, 2020 WL 1862294, at *8 (S.D.N.Y. Apr. 14, 2020); *see also United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *1 (D. Nev. May 28, 2020) ("The premise of [defendant's] request was that his release would help prevent him from contracting the virus. That need vanished when [defendant] tested positive for the virus."). While a positive COVID-19 diagnosis might not be dispositive in every case, here fortunately, no evidence before the court suggests that defendant Thomas has shown any severe symptoms as a result of contracting COVID-19.

Second, and perhaps more importantly for resolution of the pending motion, defendant does not argue that he is inhibited from providing "self-care" inside FMC Lexington, a BOP medical facility, at all. Instead, the evidence indicates that defendant is receiving both the attention and care that is required for someone with leukemia, including regular checkups, testing, and treatment at FMC Lexington. (Doc. No. 461, Ex. B, at 41–47.) Moreover, although his counsel suggests it is the case, defendant has submitted no evidence showing that he has been prevented from taking proper precautions with respect to COVID-19 at his institution of incarceration, a virus that now poses a minimal risk to him. In fact, the BOP medical records reflect that defendant was closely monitored following his positive COVID-19 test result. (*See* Doc. No. 471 at 6–7.) Finally, defendant argues that his "risk of re-infection is not theoretical; it is all but certain at this point." (Doc. No. 467 at 7.) However, the defendant has not pointed to any evidence or expert opinion supporting this conclusory claim and the court has been unable to

---

[5] There are 1,098 inmates housed at the federal medical center. *FMC Lexington*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/lex/ (last visited Sept. 2, 2020).

[6] The undersigned does not necessarily accept these reported numbers at face value given the manner in which the CDC guidelines apparently allow for individuals to be counted as recovered from the virus without confirming test results. However, there is also no evidence before the court contradicting those reported numbers.

discover any such support. In short, defendant does not explain why, at this point, he would fare better outside of FMC Lexington than inside. *See, e.g.*, *Greenhut*, 2020 WL 509385, at *1 ("The defendant bears the initial burden to put forward evidence that establishes an entitlement to a sentence reduction.").

While defendant's medical conditions are serious, the court does not find extraordinary and compelling reasons justifying his compassionate release under § 3582(c)(1)(A) at this time.

**C.      Consistency With the § 3553(a) Factors**

Because the pending motion fails to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a). Nonetheless, the court does observe that defendant Thomas is only 30 years old. (*See* Doc. No. 340 (Presentence Report) at 3.) The sentencing judge fully took into account his serious medical condition at the time of his original sentencing and, apparently based on those considerations, granted him probation despite an advisory sentencing guideline range calling for a term of imprisonment of between 37 and 46 months. Despite this significant break afforded to defendant, a little more than a year later he violated his probation by engaging in the same underlying marijuana trafficking activity as well as other criminal conduct and violations of the conditions of his probation. Thereafter, he was accordingly sentenced by the same judge who had granted him probation originally. He has now served only approximately 24 months of that 60 month sentence. *See United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)).

Were the court to consider the §3553(a) factors, in the undersigned's view, a reduction of defendant's sentence at this time under these circumstances would not adequately reflect the seriousness of his offenses of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020).

11

**CONCLUSION**

For all of the reasons explained above, defendant's motion for compassionate release (Doc. No. 461) is denied.

IT IS SO ORDERED.

Dated:     **September 2, 2020**                    /s/ Dale A. Drozd
                                                    UNITED STATES DISTRICT JUDGE